Good morning, Your Honors. Thank you for the invitation. Thank you. I am Martin Robles-Avila for the petitioner, Ms. Gonzalez-Rios. This case is about dereliction of duty, if you will. It's a case about extreme neglect on the part of the government in adjudicating an application for adjustment of status. And I guess I'll start first with jurisdiction, since the government is contesting jurisdiction. I think it's a pretty simple, it's easily, this Court easily has jurisdiction over the case, under the very case cited by the government for the proposition that there's not jurisdiction, and that is Ramadan v. Gonzalez, which said that the Court has jurisdiction over mixed questions of fact or law. In this case, the facts are largely established by the record, and the pertinent facts, at least, are not in dispute. The fact of the application filing day being April 25, 1978, and the application not being adjudicated until September 5, 1997, that's established by the record. And those are largely the facts that we're relying on and that we believe demonstrate affirmative misconduct on the part of the government. Well, is there any – you know, the law is pretty stiff on affirmative misconduct. And I don't see any affirmative misconduct other than just neglect. Well, interestingly, there's a recent case from this Court, Morgan v. Gonzalez, where the Court said that we need not decide today whether, under extreme circumstances, negligent delay could constitute grounds for estoppel. This is that case. And there are also some cases from – there's a couple of cases from 1976 and 1980. Well, your client knew that it wasn't moving forward, because in 1978, the fact that when she went back and reapplied to get her LPR status, and they told her she had to post a $5,000 bond because apparently she had been on some sort of public assistance, she didn't do that. She has to know those type of things. And so it's true, it didn't move along. But then she didn't do something at that particular point, that she didn't post the $5,000. And then she went to prison. And then she – I think through her, she – there was an application for, what is it, an I-130 or something along those lines. Correct. So she clearly knew that she had problems with her status, that she had not attained LPR status. I think the problem with relying on that fact is that the government didn't use that as a basis to deny her. In September 11, 1989, they issued that decision saying post a bond within 60 days or we're going to deny your application. The government didn't do anything about that. And ultimately, it didn't decide the application on the basis of the public charge assertion. And had the government denied the application then in 1989 and then placed her in proceedings, she could have renewed that application and she would have been eligible. Well, could have, would have, should have. But how is that affirmative misconduct? It's affirmative misconduct because the government has a duty to adjudicate applications within some kind of legal framework. And she had a duty to post $5,000, and she didn't do that. Well, I think that's open to question. I don't think that – I don't think that the facts bear out the fact that she was a public charge or was likely to be a public charge. And the facts that they cite in that decision refer to a time when she was a minor. And, in fact, I think the Board even implicitly addresses that. They say that the evidence of misconduct on the part of the government, even if the adverse decisions taken against her in the course of the application were incorrectly decided, there is no direct evidence of affirmative misconduct. And then they contradict themselves and say, well, she didn't post the bond. But I think implicitly they're talking about that decision. All right. Let's – since you don't have a lot of time and there's another issue that you want to talk about. Well, could I ask – Just a moment. Because we interrupted you. What is the closest case that you have on this? There are actually two cases. One of them is Villena v. INS, V-I-L-L-E-N-A, and it's 622F2nd1352. And it's a 1980 case. And in that case, there was a four-year delay. I'm sorry. That second what? 18? 1352. Sorry, Your Honor. 1352. And I'll submit these in a 28-J letter. Okay. Please do. That's an old case. Yeah. And in that case – Is that a Ninth Circuit case? It's a Ninth Circuit case, yes, Your Honor. Both of these are. And in that case, the court said had the INS acted within a reasonable period of time, as it had a duty to do, a visa undoubtedly would have been available to him. The INS did not respond to his petition almost four years later. There is no apparent justification for delay. Thus, we believe that the INS is a stop from claiming that she did not pursue her preference application. The other case is Son-Il-Yu v. INS. It's 534F2nd1325, Ninth Circuit, 1976. In that case, the court also found affirmative misconduct. And they said that the petitioner should not be penalized for the government's lack of diligence. And the court said, Once an alien has gathered and supplied all the relevant information and fulfilled the requirements, INS officials are under a duty to accord him within a reasonable amount of time the status to which he is entitled by law. I think those cases, and that may be where the affirmative misconduct is, in that the government has an obligation to do that. I mean, sure. I mean, I agree the petitioner should have done something in 1989. But at the same time, the government, if they had reasonably adjudicated it by then or placed her in proceedings or done something at that time and decided it, she would have had an opportunity to establish it. But for estoppel, don't you have to prove that she is ignorant of the fact that it hasn't been processed, and that's the point of the bond requirement? She knows she's supposed to bond, and she doesn't have to post a bond if her status has already been determined. So that's one of the elements that you have to establish for estoppel. Well, but I think that, I mean, what she's ignorant of is the eligibility aspect, I think. I mean, she didn't, I mean, clearly she didn't post the bond, so, you know, that's out. But I think that she wasn't aware that she really was eligible. And the government cites in the bond decision, they refer to a time when she was a minor. And I don't think that, I mean, I don't think that they can attribute that, the receipt of wealth or whatever, to her. It should be attributed to her parents or somebody else, because she was a minor. So I think that decision was in error, and I think the Board implicitly acknowledges that. Okay. You also argue that the LPR status of the parents should be imputed. Do I understand that that was never raised? It was not raised, so that was wagered on her. That's correct. Okay. Thank you. Would you like to? I can continue discussing the jurisdiction, or if you want to reserve some time for rebuttal. I'll reserve the rest of the time. Thank you, Judge. Good morning. If it please the Court, my name is Don G. Scroggin, and I represent the United States Attorney General in this case. It is important to understand in this case that there is no statutory clock running. We've heard that there was a dereliction of duty and that the government had a duty to adjudicate this application. However, without a statutory clock running, which was not happening in this case, the government has no duty to adjudicate an application that is incomplete. Well, I think Ramadan is a problem for you in terms of I think that we have to get to the merits of this. I agree, Your Honor. And while we would disagree, the government, as you know, sought rehearing in Ramadan. We agreed with the dissent, including that joined in by Your Honor, calling it a matter of creative interpretation. However, we acknowledge that the ---- All right. Dissents are dissents, though, you know. And as much as I loved my, you know, being in the dissent, I have to move on to the majority. I agree, Your Honor. And we acknowledge that it is the controlling precedent in this circuit, and so we will move also to the merits. We ---- As of this day, I'm afraid. My 20HA letter to the Court apprised the Court of the holding Ramadan, and in essence said that while we continue to believe Ramadan was wrong, we decided we acknowledge it as controlling precedent, and we'll move on to the merits of this case. So that's not an issue at this time. Well, I guess the thing is, could the government have waited any longer here? You know, you waited long enough to let her get convicted of a drug conspiracy. You know, it's kind of like, you know, on some level, you know, I understand that there's a lot of cases, but I would really like to hope that the government would move a little more quickly so that we won't have to be victimized by a drug conspiracy, and she goes to prison for what she gets, an eight-year sentence, goes for almost five years. So what, you know, I don't think the government could have been more negligent, but tell me why that's not enough. Well, the facts are important in this case. It's important to understand there are two applications for adjustment here, not just  And I'm, as the Court may be aware, this is a two-step process. In order to be considered for adjustment of status, a visa petition must first be approved. The stepfather's visa petition was approved in 1986. It was in 1989, three years later, that Petitioner received the notice to post bond, and by failing to act, by ignoring that letter, Petitioner, by her own actions, terminated her application. The government has no duty to process a terminated application, and the government's duty ended three years into the process. I think it's useful to look at page 207, 206-207, is that letter to Petitioner. It says, You are granted 60 days from the date of this notion within which to post the required bond. Failure to post the bond will result in the denial of your application. That's three years into the processing of her first application. At that point, the government's duty ended because she failed to perfect her application, and the government has no duty to process an aborted application. But they said it was going to be denied. They said it was going to be denied. Petitioner knew it was going to be denied. But it never was. It was denied in 1997. It was eventually. It's a purely ministerial act. But Petitioner had no surprise. She was surprised that it would be denied. She did not contest the letter, and she did not file the bond. She simply ignored it. But there was no element of surprise to her that her application for adjudication ended three years into the process, and that the denial in 1997 was purely a ministerial clerical act to initiate removal proceedings. Well, do you mean it was denied in law before 1997? It was denied as de facto denied. Petitioner knew it would be denied. Petitioner knew it was at an end. She was informed in the words I just read you. And it was a purely ministerial act in 1997 that it was formally denied. I suppose you could say at least she knew that it hadn't been granted. I beg your pardon? At least she knew that it hadn't been granted. She knew that it would be denied if she did not post a bond. She did not contest the requirement to post a bond, and she did not post a bond. I think those words speak for themselves. Now, what happened about the I-130 later? The I-130 later, Your Honor, is a very good point. That was filed by her husband initiating a second adjudication – a second adjustment application. Her husband filed an I-130, which was granted in 1992, before her conviction. So she was, therefore, eligible to apply for adjustment for a full year between 92 and 93, the date of her conviction. She had no conviction that would disqualify her, and she did nothing. She did not apply for adjustment during that year. Once she was convicted of drug trafficking with the use of firearms, an aggravated felony, she was disqualified, and that happened a year later. She did seek to renew – she did seek to file for adjustment in removal proceedings using her husband's I-130, but she, at that point, was not eligible because of her conviction. I think these facts are helpful in putting into perspective that, as to the first adjustment application, we're talking about a three-year delay before the petitioner, by her own actions, terminated her application. And the government has no duty, no duty at all, to adjudicate an application that is terminated. Second, setting that aside for the moment, there is no legal requirement for the government to process an application for a benefit. And the statute is quite clear. Congress knows how to set a deadline, if they wish to have a deadline. You might compare this with naturalization, where the – Kagan. I mean, if the statute or the regulation doesn't say – The statute and the regulation have no deadlines for the government to act. This is deemed – unless the statute or the regulation says if it's not acted upon within 30 days, it's deemed granted, which sometimes happens. That is not present here. That's not here. Congress knows how to set such deadlines, as I'm sure this Court is aware, and they set no deadline here. One of the reasons is this is discretionary relief. This is a discretionary benefit granted by the government. This is not something that – to which there is any entitlement on the part of Petitioner. And as a consequence, with no duty on the part of the government to meet any deadlines, it is virtually impossible for us to say the government took too long. But setting that aside for the moment, I think it's useful to look at the facts that three years is not – is what we're talking about here between the granting of the first I-130 that made her eligible for adjustment and her terminating it by her own actions. There was then a whole passage of a year during which she could have applied for a second application, did not do so, and after her criminal conviction, when she was no longer eligible for adjustment, that's when she, in her removal proceedings, renewed her second application. You've heard that Petitioner has waived the second argument for imputation. I don't think I need to address that. I would simply state that while – that this case simply has no legs to stand on from the standpoint of the law or the facts in equity, Petitioner is – even if we were to reach the point of whether or not there was equitable estoppel, there's simply, as the Board correctly held, no direct evidence whatsoever of any affirmative misconduct on the part of the government. There's simply nothing here on which a grant of – or a finding of equitable estoppel could be found. If there's not any further questions. Are there any further questions? No. Thank you. Thank you. Thank you, Judge. I want to clarify a couple of things. First of all, I – the relevant period is not three years, it's 11 years. The application was filed in 1978. The second petition – I mean, she became ineligible to adjust on the first – on the basis of her stepfather in 1991 when she married. I mean, that goes without saying. But the application was filed in 1978, and then in 1989 they issued this request to postpone. So it's an 11-year period that we're talking about, not three years. And I think that the government and even Congress and the courts have been acknowledging, or at least loosening the restrictions where, for example, the CSPA, Congress acknowledges that the alien shouldn't be penalized by government delay. Or the recent Board decision, Hashmi, where the Board said that aliens should not be penalized because the government's delaying adjudicating an application or something like that, and denying the opportunity to apply because a visa petition was approved, for example. At what point should the government have granted this application? I guess I'm not quite sure I understand your position. Well, actually, I mean, it's – unfortunately, it's not really – it's kind of buried in the record, but there was an – whenever they filed the application, I guess at the time they automatically set an interview. And in this case, there was an interview on July 25, 1978. I mean, the record doesn't bear out what happened. But, I mean, we would say what we're arguing is that as of 1989, when they issued that letter, that's whenever something should have happened because she would have been eligible to adjust on – at that time. As of 19 – I'm sorry. What – which date? The September 11, 1989 date when they issued the notice to postpone. Because – and unfortunately, again, it's not a part of the record, but she sent an inquiry to say what's going on with my application, and then this generated the notice to postpone in – But she didn't post the bond. She did not post the bond. And we don't know what happened in 1978 when her – Right. That is correct. When the application on her behalf was not active. That is correct, Your Honor. That is correct. Okay. But we think that the delay in this case and the fact that the government does have a duty to adjudicate an application, otherwise, why pay the fee? We think that under the facts, the Court can find that there was affirmative misconduct on the part of the government. Thank you. Thank you for your time. Thank you. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Callahan, Lynn